## Cunningham Estate

*John M. Garber*, for executor.
*Michael P. Bianchini*, for objectors.

MILLER, *J.*, June 15, 1988—This matter is before the court on objections filed to the first and final account of Edward H. H. Garber, executor of the last will and testament of Margie E. Cunningham, deceased, by the beneficiaries named in paragraph IV of that will.

The most significant of the exceptions involves the disposition of money which had been, at one-time, deposited in a savings account in Cumberland Valley Savings and Loan Association. In 1974, the testatrix opened a savings account in Cumberland Valley Savings and Loan Association, depositing in that account money which represented the proceeds of the sale of her deceased husband's small business. The account was opened in the names of the testatrix and Violet Deamer as joint tenants with the right of survivorship. Violet Deamer is the

testatrix's niece. In 1978, testatrix executed a will bequeathing the proceeds in that savings account to the children of her deceased husband. In that will, she identified the money in the savings account as representing the proceeds of the sale of her late husband's business.

On December 3, 1981, she executed a later will. In paragraph IV of that will, she bequeathed the balance in the Cumberland Valley Savings and Loan Association savings account to the children of her deceased husband, without identifying it, however, in any way. She left her residuary estate to her sisters and brothers and to her nieces and nephews. On the same date, she changed the signature card at the savings and loan association to her name alone.

On December 2, 1981, the day before she executed her last will and testament, the testatrix, who was then a widow residing alone and advancing in age, executed a general power of attorney authorizing her niece, Violet Deamer, to act on her behalf with regard to two separate bank accounts, a savings account and a checking account at the Drovers and Mechanics Bank of York.

On March 20, 1984, the testatrix, who was then residing at Barley South Nursing Home and had no plans to return home, executed a second and more comprehensive power of attorney in favor of Violet Deamer. This second power of attorney dealt not only with the disposition of the testatrix's residence and household furniture, but also with the money on deposit at the Cumberland Valley Savings and Loan Association. On May 11, 1984, acting pursuant to her power of attorney, Violet Deamer withdrew the funds on deposit to the account of the testatrix at the Cumberland Valley Savings and Loan Association. She closed that account and de-

posited the proceeds therefrom in the testatrix's account at the Drovers and Mechanics Bank of York.

On May 24, 1986, testatrix died leaving a gross estate of approximately $12,000. Most of that estate consisted of funds in her account at the Drovers and Mechanics Bank of York.

The children and grandchildren of the testatrix's late husband, being the testatrix's stepchildren and stepgrandchildren, have filed objections to the account, claiming the remainder of the proceeds of the bank account in the Drovers and Mechanics Bank of York. They contend that the bequest to them by the testatrix of the funds in the Cumberland Valley Savings and Loan Association was not adeemed because the testatrix herself did not withdraw the funds and that the funds, having been acknowledged as the proceeds of the sale of the testatrix's late husband's business, should be traced and distributed to those persons named in paragraph IV of testatrix's last will and testament. We must now determine whether an ademption of the bequest in paragraph IV occurred when Violet Deamer, acting as attorney-in-fact, closed the testatrix's account at the Cumberland Valley Savings and Loan Association and deposited the funds in an account in the Drovers and Mechanics Bank of York. Section 2514 (16.2) of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. §2514 (16.2) provides that:

"If an attorney-in-fact, during the time that his principal is incompetent within the meaning of section 5501 . . ., sells or exchanges property of the principal which is specifically . . . bequeathed, the specific legatee . . . has the right to . . . the net sale price or the property received in exchange. *For the purposes of this paragraph,* a sale or exchange of property made by an attorney-in-fact shall be

*deemed* to have been made during the time that the principal is incompetent, *unless shown to the contrary*. This does not apply if it is shown that for a period of at least one year subsequent to the sale or exchange the principal was not incompetent within the meaning of section 5501." (emphasis supplied)

Section 5501 of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. §5501, provides that, " 'Incompetent' means a person who, because of infirmities of old age, . . . is unable to manage his property, or . . . lacks sufficient capacity to make or communicate responsible decisions concerning his person."

Since this appears to be a case of first impression, we must make two preliminary determinations. First, we find that the transfer of funds from one bank to another by closing the one account and depositing that balance in another bank constitutes an "exchange" within the meaning of and for the limited purpose of section 2514 (16.2) of the Probate, Estates and Fiduciaries Code.

The second determination involves the placing of the burden of proof. Ordinarily, the acts of an attorney-in-fact are to be viewed in the context of traditional principal and agent law. The provisions of section 2514 (16.2), however, are directed toward a narrow and specific set of circumstances. Experience tells us that the person designated as attorney-in-fact is often the same person who has a detailed and intimate knowledge of the principal's personal affairs. The simple act of selling or exchanging a specifically bequeathed asset could deprive the legatee of his or her bequest without the knowledge of the principal, and could frustrate the testamentary scheme of the principal without any concomitant benefit to the principal. We are therefore satisfied that the legislature intended to place some restrictions upon the power of an attorney-in-fact to sell or

exchange specifically bequeathed items in a manner that would have worked an ademption if done by the principal.

The extent of that restriction is undefined. Section 2514 (16.2) provides that such a sale or exchange shall be "deemed' to have been made while the principal was incompetent. Black's Law Dictionary, Fifth Edition, (1979), defines "deem" as follows: "to hold; consider; adjudge. . .". Whether this is more or less conclusive than the term "presumption" is, to us, of litte moment, in view of the further provision of section 2514 (16.2) which states: "unless shown to the contrary." Since it is obvious that one who objects to the sale or exchange of the bequeathed property would have no interest in showing that the incapacitated principal was not incompetent, we conclude that the burden of proof that such principal was not incompetent at the time of the transaction rests upon the proponent of the act of ademption. In this case, that proponent is the executor.

The testimony of three separate individuals who saw the testatrix on May 10, 1984, the day before the funds are withdrawn, indicates that Margie E. Cunningham was able to manage her property at that time. On May 10, 1984, Edward H. H. Garber, the executor and the testatrix's attorney for some 30 years, traveled to Barley South with Linda K. Parrish, a notary public, for the purpose of having the testatrix execute a deed of conveyance to her residence which had been sold in accordance with the second power of attorney. Mr. Garber testified that he and the testatrix discussed the amount of the purchase money mortgage that she was taking from the purchaser and the monthly interest rate on that mortgage. Mr. Garber stated that, in his opinion, the testatrix understood her business affairs on May 10,

1984. Ms. Parrish corroborated the testimony of Mr. Garber.

Mr. Garber further testified that he and the testatrix discussed the withdrawal of the monies on deposit at the Cumberland Valley Savings and Loan Association. The plan was to consolidate all of the testatrix's money, which she needed for her care at Barley South, into a single bank account. Mr. Garber indicated that the testatrix was capable of signing the withdrawl slip herself and that she agreed that the money should be withdrawn. Violet Deamer, therefore, exercised her power of attorney merely as a matter of convenience, since the testatrix was unable to travel to the bank. In any event, Mr. Garber's testimony clearly shows that Margie E. Cunningham understood the nature and extent of her property on May 10, 1984.

Dr. James L. Nicholas, who had been the testatrix's personal physician for nearly 30 years, also testified on behalf of the executor. Dr. Nicholas saw the testatrix on a monthly basis from the time she arrived at Barley South on March 10, 1984 until she moved to the Lutheran Village on July 23, 1984. One of his monthly visits occurred on May 10, 1984. Dr. Nicholas testified that, although the testatrix suffered from arteriosclerosis and experienced intermittent confusion, she was completely coherent on May 10, 1984. Moreover, Dr. Nicholas stated that he never noticed anything to suggest that Margie E. Cunningham was mentally incompetent.

For the foregoing reasons, we are satisfied that, on May 11, 1984, the testatrix was not incompetent within the meaning of section 5501. The bequest in paragraph IV of her will was, therefore, adeemed.

The objectors further contend that the executor has overpaid the Pennsylvania Inheritance Tax. Without addressing the issue of standing, in view of

our finding that the specific bequest in favor of the objectors has been adeemed, we note that the executor has applied for and received a refund of the overpayment in the amount of $737.38.

We find the other objections to the account to be without merit and we refuse them as well. Accordingly, we enter the following

## ORDER

And now, June 15, 1988, the objections to the first and final account of Edward H. H. Garber, executor of the last will and testament of Margie E. Cunningham, deceased, are hereby refused and dismissed. We will enter our adjudication and decree nisi in conformity with this opinion.